WO

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Jill Christina Manolian, | No. CV-20-00365-PHX-DJH |
| Plaintiff, | **ORDER** |
| v. | |
| Don Ray Lytle, et al., | |
| Defendants. | |

Pending before the Court is Defendants Andrews Logistics Texas, LP and Don Ray Lytle's ("Defendants") Renewed Motion for Summary Judgment (Doc. 54). Plaintiff Jill Christina Manolian ("Plaintiff") filed a Response in opposition (Doc. 55), and Defendants filed a Reply (Doc. 59).

**I.   Background[1]**

Plaintiff and her husband (the "Manolians"), through their attorney, filed a Voluntary Petition ("Petition") under Chapter 13 of the Bankruptcy Code on October 1, 2015. (Doc. 23-2). The Manolians were required to disclose all their assets and property on several "Schedules," which are filed along with the Petition. (*Id.*) In "Schedule B" the Manolians were required to list all personal property, which included such items as cash, checking, and savings accounts, as well as household goods, but also required the Manolians to disclose "contingent and unliquidated claims of every nature." (*Id.* at 8).

The Manolians' Chapter 13 Plan (the "Plan") was confirmed by the bankruptcy

---

[1] The Court will adopt portions of the background facts from its previous Order. (Doc. 47).

court on April 27, 2016, and their Plan term was to span 43 months. (Doc. 23-5). On November 7, 2017, during the pendency of the Plan, Plaintiff was involved in an accident that gave rise to the present personal injury action. (Doc. 1). In her Complaint, Plaintiff seeks general damages, loss of wages, special damages, and other monetary relief arising from severe injuries that cause "pain, suffering, distress, mental and emotional anguish and anxiety, loss of consortium and a general decrease in quality of life." (Doc. 1-3).

On August 29, 2019, Chapter 13 Trustee Russell Brown filed a notice informing the bankruptcy court that the Manolians had completed requirements under the Plan. (Doc. 23-7). Weeks later, on October 4, 2019, Plaintiff filed this action in Maricopa County Superior Court. (Doc. 1). On April 2, 2020, the Manolians were formally discharged from bankruptcy and were entitled to discharge over $450,000.00 in debt. (Doc. 23-9).

Although they filed amendments to their Schedule I (income) and Schedule J (expenses) during the Plan term, the Manolians did not file any additions, revisions, or other changes to their Schedule B (assets) to account for the potential personal injury action.

On July 20, 2021, Defendants filed a Motion for Summary Judgment, asking this Court to dismiss this case and bar Plaintiff from litigating her personal injury claims on the basis of judicial estoppel, arguing that Plaintiff failed to report the potential of this lawsuit to the Chapter 13 Bankruptcy Trustee before her bankruptcy discharge. (Doc. 23). Plaintiff argued that her failure to report the potential lawsuit as an asset of her bankruptcy estate was a mistake, and thus that the Court should not bar her claims. (Doc. 25).

On March 4, 2021, this Court denied Defendants' Motion for Summary Judgment without prejudice and stayed the matter, ordering the Manolians to disclose their personal injury action to the bankruptcy court. (Doc. 47 at 3). Plaintiff subsequently reopened her bankruptcy proceedings and provided notice of the lawsuit to the trustee. (Doc. 50).

Three months later, on June 4, 2021, Defendants filed a Renewed Motion for Summary Judgment, arguing Plaintiff's representation that her failure to disclose her personal injury lawsuit as an asset of her bankruptcy estate was not a mistake. To support

1  this claim, Defendants point to the attorney contingency fee agreement signed between
2  Plaintiff and her personal injury attorney, Rick Horton, which contained a provision that
3  required her to disclose the personal injury action in the event of a bankruptcy. (Doc. 54
4  at 2). Defendants further contend Plaintiff signed this fee agreement on January 20, 2018,
5  while Plaintiff's bankruptcy proceeding was pending, and 21 months before Plaintiff's debt
6  was discharged and bankruptcy case closed on October 9, 2019. (*Id.*) Defendants thus
7  argue Plaintiff's failure to disclose was not inadvertent or a mistake, that Plaintiff is
8  judicially estopped from bringing this claim against Defendants, and that the bankruptcy
9  trustee is the real party in interest and should be substituted as the named plaintiff.
10 (*Id.* at 2–5).

**II.    Legal Standard**

A court will grant summary judgment if the movant shows there is no genuine dispute of material fact and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986). A factual dispute is genuine when a reasonable jury could return a verdict for the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). Here, a court does not weigh evidence to discern the truth of the matter; it only determines whether there is a genuine issue for trial. *Jesinger v. Nevada Fed. Credit Union*, 24 F.3d 1127, 1131 (9th Cir. 1994). A fact is material when identified as such by substantive law. *Anderson*, 477 U.S. at 248. Only facts that might affect the outcome of a suit under the governing law can preclude an entry of summary judgment. *Id.*

The moving party bears the initial burden of identifying portions of the record, including pleadings, depositions, answers to interrogatories, admissions, and affidavits, that show there is no genuine factual dispute. *Celotex*, 477 U.S. at 323. Once shown, the burden shifts to the non-moving party, which must sufficiently establish the existence of a genuine dispute as to any material fact. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 585–86 (1986). The evidence of the non-movant is "to be believed, and all justifiable inferences are to be drawn in his favor." *Anderson*, 477 U.S. at 255. But

if the non-movant identifies "evidence [that] is merely colorable or is not significantly probative, summary judgment may be granted." *Id.* at 249–50 (citations omitted). "A conclusory, self-serving affidavit, lacking detailed facts and any supporting evidence, is insufficient to create a genuine issue of material fact." *F.T.C. v. Publ'g Clearing House, Inc.*, 104 F.3d 1168, 1171 (9th Cir. 1997).

## III. Discussion

Defendants argue they are entitled to summary judgment because Plaintiff's representation that her failure to disclose the lawsuit was a mistake is false. (Doc. 54 at 2). Defendants argue Plaintiff is judicially estopped from bringing this claim against them because she failed to disclose her personal injury action during her bankruptcy proceedings. (*Id.* at 3). Defendants further contend the bankruptcy trustee is the real party in interest and should be substituted as the named plaintiff. (*Id.* at 4).

Plaintiff argues Defendants have not produced "new evidence" to demonstrate that Plaintiff was aware that a potential lawsuit was an "asset" of the bankruptcy case and that her failure to disclose the claim was not an inadvertent mistake. (Doc. 55 at 5). Plaintiff contends judicial estoppel is not appropriate where, as here, a plaintiff failed to disclose a potential claim based on inadvertence or mistake. (*Id.*) Finally, Plaintiff argues whether a Chapter 13 debtor has standing to pursue a claim on her own behalf is an irrelevant issue because, here, the bankruptcy matter has been reinstated and the trustee is aware of the litigation and authorized Plaintiff's counsel to pursue it. (*Id.* at 6).

### A. Judicial Estoppel

A debtor files a petition with the bankruptcy court to commence a voluntary bankruptcy case. Fed. R. Bankr. P. 1002(a). Schedules of the debtor's assets and liabilities, current income and expenses, and a statement of financial affairs, must accompany the bankruptcy petition. Fed. R. Bankr. P. 1007(b)(1). The bankruptcy estate includes all legal or equitable interests of the debtor as of the commencement of the case. 11 U.S.C. § 541(a)(2).

Where, as here, the debtor files under Chapter 13, the property of the estate includes

causes of action that arise after the commencement of the case and until the case is closed, dismissed, or converted. *See In re Fleet*, 53 B.R. 833, 838 (Bankr. E.D. Pa. 1985). The debtor must disclose any litigation likely to arise in a nonbankruptcy context. *See Hay v. First Interstate Bank of Kalispell, N.A.*, 978 F.2d 555, 557 (9th Cir. 1992). If the debtor is unaware of all the facts giving rise to a civil action before the filing of his or her petition and financial schedules, the debtor must amend those schedules when he or she becomes aware of the existence of the action because it is an asset of the bankruptcy estate. *Id.*; Fed. R. Bankr. P. 1009(a).

"Judicial estoppel . . . precludes a party from gaining an advantage by taking one position, and then seeking a second advantage by taking an incompatible position," either in the same action or in different actions. *Donato v. Metro. Life Ins. Co.*, 230 B.R. 418, 421 (N.D. Cal. 1999) (citation omitted). It is an "equitable doctrine invoked by a court at its discretion." *Ah Quin v. Cty. of Kauai Dep't of Transp.*, 733 F.3d 267, 270 (9th Cir. 2013) (citation omitted). The purpose of judicial estoppel "is to protect the integrity of the judicial process by prohibiting parties from deliberately changing positions . . . ." *Id.*

Courts consider three factors to determine whether to apply the doctrine in a particular case: (1) whether a party's later position is "clearly inconsistent" with its earlier position, (2) whether a party has succeeded in persuading a court to accept that party's earlier position, so that judicial acceptance of an inconsistent position in a later proceeding would create the perception that either the first or the second court was misled, (3) whether the party seeking to assert an inconsistent position would derive an unfair advantage or impose an unfair detriment on the opposing party if not estopped. *Id.* (quoting *New Hampshire v. Maine*, 532 U.S. 742, 750–51 (2001).

If a plaintiff-debtor omits a pending lawsuit from the bankruptcy schedules and obtains a discharge, judicial estoppel bars the action. *Ah Quin*, 733 F.3d at 271. Relevant here, however, is that "[i]t may be appropriate to resist application of judicial estoppel when a party's prior position was based on inadvertence or mistake." *Id.* "When a plaintiff-debtor has not reopened bankruptcy proceedings, a narrow exception for good

- 5 -

faith is consistent with *New Hampshire* and with the policies animating the doctrine of judicial estoppel." *Id.* at 273.  In such cases, "it makes sense to apply a presumption of deliberate manipulation by the plaintiff-debtor. *Id.*  However, where the plaintiff-debtor has reopened the bankruptcy proceedings to correct her mistake, "a *presumption* of deceit no longer comports with *New Hampshire*." *Id.*  In such cases, "[t]he relevant inquiry is, more broadly, the plaintiff's subjective intent when filling out and signing the bankruptcy schedules." *Id.* at 277.

i. **Inadvertence or Mistake**

Under the Bankruptcy Code, Plaintiff should have disclosed her personal injury lawsuit in her bankruptcy schedules as an asset of her estate.  Plaintiff does not dispute this.  She has filed a declaration in which she states that her failure to disclose her personal injury lawsuit in her bankruptcy schedules was the result of inadvertence and a mistake.  (Doc. 25-1 at ¶ 11).  Specifically, Plaintiff states that when she met with her bankruptcy lawyer, Larry Karandreas, she does not recall discussing with his office any potential lawsuits or the requirement to list those in her bankruptcy petition.  (*Id.* at ¶ 6).  She further claims that even if this discussion had occurred, she filed her bankruptcy petition in October of 2015, and she had no potential claims or lawsuits.  (*Id.*)  She recalled signing the forms prepared by Mr. Karandreas' office and recalled them telling her that if any of the information changed, she should let them know.  (*Id.* at ¶ 7).

After filing the original bankruptcy petition, both Plaintiff and her husband changed jobs and their income changed.  (*Id.* at ¶ 8).  She states they advised their lawyer of the changes and he prepared amended schedules that they signed and then filed with the Bankruptcy Court in February 2016.  (*Id.*)  The car accident still had not occurred.  (*Id.*)

Then, in November 2017, Plaintiff was involved in the car accident with Defendants. (*Id.* at ¶ 9). She states it did not occur to her to mention it to her bankruptcy attorney because she "did not know that potential lawsuits had to be listed or added to a bankruptcy petition." (*Id.*)  If she had known, she claims, she would have called Mr. Karandreas' office to let him know.  (*Id.*)

Two years later, in October 2019, Plaintiff filed the current lawsuit through a different attorney, Rick Horton. (*Id.* at ¶ 10). She did not advise him, however, that she was at the end of paying off her Chapter 13 Bankruptcy Plan because she did not know her bankruptcy was relevant to the lawsuit. (*Id.*) She further explains she did her best to comply with the court rules and it was not her intention to withhold information and that her failure to disclose the lawsuit was inadvertent and a mistake. (*Id.* at ¶ 11). Plaintiff subsequently reopened her bankruptcy proceedings and provided notice of the lawsuit to the trustee. (Doc. 50).

In Response to Plaintiff's testimony that her failure to disclose the lawsuit was inadvertent and a mistake, Defendants assert that judicial estoppel is still warranted because Plaintiff's representation is false. (Doc. 54 at 2). They argue the attorney contingency fee agreement ("Fee Agreement") signed between Plaintiff and her attorney, Rick Horton, contained a provision that required her to disclose the personal injury action in the event of a bankruptcy. (*Id.*) The provision states, in relevant part: "COOPERATION by Client is essential . . . Client understands that in the event of Client's bankruptcy, the Firm must turn over Client's portion of the Claim recovery to the bankruptcy Trustee." (Doc. 54-2 at 3). Defendant highlights that Plaintiff signed this Fee Agreement on January 20, 2018, while her bankruptcy proceeding was active and ongoing, and twenty-one months before Plaintiff's debt was discharged and bankruptcy case was closed on October 9, 2019. (Doc. 23-8 at 6).

Plaintiff does not dispute the validity of the Fee Agreement or that she signed the Fee Agreement on January 20, 2018. Instead, she argues "she did not realize the potential lawsuit was related to the bankruptcy" and therefore "did not notify her bankruptcy attorney about the accident." (Doc. 55 at 3). She claims her amendment of her schedules establishes she was acting in good faith to notify the bankruptcy court of changes to her financial situation. (*Id.* at 9).

Where, as here, a plaintiff-debtor has reopened the bankruptcy proceedings and has corrected the initial filing error, the narrow interpretations of mistake and inadvertence do

not apply. *Ah Quin*, 733 F.3d at 276.  Under the narrow interpretation, courts ask "not whether the debtor's omission of the pending claim from the bankruptcy schedules was inadvertent or mistaken; instead, they have asked only whether the debtor knew about the claim when he or she filed the bankruptcy schedules and whether the debtor had a motive to conceal the claim." *Id.* at 271.  But where the plaintiff-debtor has reopened the bankruptcy proceedings to correct the error, "[t]he relevant inquiry is not limited to the plaintiff's knowledge of the pending claim and the universal motive to conceal a potential asset . . . [t]he relevant inquiry is, more broadly, the plaintiff's subjective intent when filling out and signing the bankruptcy schedules." *Id.* at 277.

Here, the Court finds a genuine dispute of fact exists as to whether Plaintiff mistook her obligation to disclose or hid the case.  On the one hand, Plaintiff filed an affidavit in which she swore that, when she reviewed the bankruptcy schedules, she did not think that she had to disclose her pending lawsuit because her lawyer never mentioned the requirement to list lawsuits on her bankruptcy petition and, at the time of filing, she had no potential claims or lawsuits.  (Doc. 25-1 at ¶ 6).  She also points out that after she and her husband changed jobs and their income changed, they amended their schedules.  (*Id.* at ¶ 8).  She represents the only reason she did not mention the car accident to her bankruptcy attorney was because "she didn't think it had anything to do with the bankruptcy petition." (*Id.* at ¶ 9).  She further highlights once she knew she was required to disclose the lawsuit, she promptly did so.  (Doc. 55 at 9).

On the other hand, Plaintiff's Fee Agreement suggests she should have been aware that a pending claim is relevant.  Moreover, Plaintiff's "you don't know what you don't know" argument contravenes longstanding contract law.  (Doc. 55 at 8); *see In re Hyun-Bok Chung*, 43 B.R. 368, 369 (D. Haw. 1984) ("A person who signs a contract is presumed to know its contents.") (citation omitted).  Nonetheless, viewing the evidence in the light most favorable to Plaintiff, and thus crediting her affidavit, the Court will find a genuine dispute of fact as to whether her bankruptcy filing was inadvertent.  *See Ah Quin*, 733 F.3d at 278 (reversing district court's grant of summary judgment in favor of defendant because

by interpreting the facts in the light most favorable to plaintiff, there was "factual support for a conclusion either of mistake and inadvertence, or of deceit"); *see also T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n*, 809 F.2d 626, 630–31 (9th Cir. 1987) ("at summary judgement, the judge must view the evidence in light most favorable to the nonmoving party")).

Because the Court finds a genuine dispute of fact as to whether Plaintiff's prior position was based on inadvertence or mistake, the Court will deny Defendant's Motion for Summary Judgment. *See Ah Quin*, 733 F.3d at 272 ("A court is not 'bound' to apply judicial estoppel, particularly when 'a party's prior position was based on inadvertence or mistake.'").

**B. Failure to Bring Suit in Name of Bankruptcy Trustee**

Defendants contend the bankruptcy trustee, Russel Brown, is the real party in interest and should be substituted as the named plaintiff. (Doc. 54 at 4). Defendants argue Plaintiff's claims against it are the property of her Chapter 13 estate and therefore only the Chapter 13 trustee has standing to litigate them. Plaintiff argues a Chapter 13 debtor, as distinguished from a Chapter 7 debtor, has concurrent standing with the Chapter 13 trustee to litigate claims that are the property of the estate. (Doc. 55 at 13). She further contends the bankruptcy proceedings have been reinstated and the trustee has authorized Plaintiff's counsel to pursue the matter to its conclusion. (*Id.* at 6)

"[I]n general, [bankruptcy] trustees are the exclusive parties possessing the right to sue on behalf of the estate." *Hammons v. US Med. Home Inc.*, 2014 WL 11514325, at *2 (D. Ariz. Oct. 8, 2014) (citation omitted) (ordering plaintiffs to move for substitution of the trustee as named plaintiff). However, "Chapter 13 debtors have standing to pursue claims against others when those claims belong to the bankruptcy estate because 'the reality of a filing under Chapter 13 is that the debtors are the true representatives of the estate and should be given the broad latitude essential to control the progress of their case.'" *Donato*, 230 B.R. at 425 (citations omitted) (finding plaintiff had concurrent standing with the Chapter 13 trustee).

Defendants argue *Hammons* support their position; Plaintiff argues *Donato* supports her position. The Court finds *Hammons* distinguishable. Not only did the *Hammons* court state a general principle of law but also dealt with a Chapter 7 estate, not a Chapter 13 estate. *Donato*, on the other hand, involved a Chapter 13 estate and stated the exception to the general rule. There, the court held plaintiff had concurrent standing with the Chapter 13 trustee to litigate the claims. *Donato*, 230 B.R. at 425. This Court will follow suit. Nevertheless, because Plaintiff's claims are the property of her Chapter 13 estate, the Court instructs the clerk of the court to send a copy of this Order to the Chapter 13 trustee, Russel Brown. *Id.*

Accordingly,

**IT IS HEREBY ORDERED** that Defendants Renewed Motion for Summary Judgment (Doc. 54) is **DENIED**.

**IT IS FURTHER ORDERED** Plaintiff is kindly directed to send a copy of this order to the Chapter 13 trustee, Russell Brown and file a Notice with the Court reflecting the same within seven (7) days.

Dated this 7th day of March, 2022.

Honorable Diane J. Humetewa
United States District Judge